UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **CHARLES RILEY and GEORGIA** | ) | |
| **RILEY, as Natural Parents of** | ) | |
| **CHARLES GREGORY RILEY,** | ) | |
| **deceased, et al.**, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 2:12CV00039 ERW |
| **WILLO PRODUCTS COMPANY, et al.**, | ) | |
| | ) | |
| Defendants. | | |

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the Court on Motions for Judgment on the Pleadings filed by

Defendants Willo Products Company ("Willo") and Bradley Corporation ("Bradley") [ECF Nos.

20, 22].  Defendants request this Court to enter judgment in their favor and against Plaintiffs, in

accordance with Federal Rule of Civil Procedure 12(c), on Plaintiffs' claims of Negligence

(Counts I - against Willo, and III - against Bradley) and Strict Liability - Product Defect (Counts

II - against Willo, and IV - against Bradley) contained in Plaintiffs' Complaint.

## I.     FACTUAL BACKGROUND

The Court adopts the following statement of facts as well-pleaded allegations in

Plaintiffs' Complaint [ECF No. 1].  *Ginsburg v. Inbev NV/SA,* 623 F.3d 1229, 1233 n. 3 (8th Cir.

2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Plaintiffs are family members of Charles Gregory Riley ("Decedent"), who died on June

2, 2009, as a result of using a bed sheet tied to a collapsible hook to cut off his air supply, while

he was detained in a holding cell at the Randolph County Justice Center [ECF No. 1].

Defendants Willo and Bradley are engaged in the business of designing, manufacturing,

distributing, and selling detention equipment systems and controls, including  security clothes

hooks [ECF No. 1].  During the relevant time period, Defendants sold their manufactured

products to Randolph County, where the products were used in the cells located inside the

Randolph County Justice Center [ECF No. 1].  Defendants designed, manufactured, distributed,

or sold the security clothes hook that was located in the Randolph County Justice Center on June

2, 2009.   The security clothes hook was designed, manufactured, and marketed to release when

more than twenty (20)  pounds of force was applied to the hook, to, among other things, prevent

individuals from committing suicide  [ECF No. 1].  The security hook did not release when

Decedent applied at least twenty (20) pounds of force by tying a bed sheet to the hook, and

Decedent died as a result of suicide by hanging [ECF No. 1].

On June 1, 2012, Plaintiffs filed their four-count Complaint against Defendants, asserting

negligence and strict liability claims for wrongful death  [ECF No. 1].  Both Willo and Bradley

filed Motions for Judgment on the Pleadings, contending that the Decedent's intervening act of

suicide prevents Plaintiffs from demonstrating the essential element of causation in their claims,

and that Defendants are entitled to judgment as a matter of law [ECF Nos. 20, 22].

## II.    LEGAL STANDARD

Generally, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same

standard as a 12(b)(6) motion to dismiss.  *Ginsburg*, 623 F.3d at 1233, n. 3; *Clemons v.

Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009); *Ashley County v. Pfizer*, 552 F.3d 659, 665 (8th

Cir. 2009).  The Court must view the allegations in the Complaint liberally and in the light most

favorable to Plaintiff.  *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (citing

*Luney v. SGS Auto. Servs,*, 432 F.3d 866, 867 (8th Cir. 2005)).  The Court "must accept the

2

allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005).  A complaint must have "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  To prove the grounds for entitlement of relief, a plaintiff must provide more than labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555; *Huang v. Gateway Hotel Holdings*, 520 F.Supp.2d 1137, 1140 (E.D. Mo. 2007).

"[T]he Court generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the complaint.'" *State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999). Additionally, the Court may consider materials that are "necessarily embraced by the pleadings." *Piper Jaffray Cos. v. National Union Fire Ins. Co.*, 967 F.Supp. 1148, 1152 (D.Minn. 1997); *Porous Media Corp. v. Pall Corp*., 186 F.3d 1077, 1079 (8th Cir. 1999).

III.   DISCUSSION

The Court interprets the forum state's law when it has power under diversity jurisdiction. *Gray v. AT&T Corp.*, 357 F.3d 763, 765 (8th Cir. 2004).  In this diversity case, Missouri law applies.  *Id.*  Accordingly, the Court shall resolve the issues by attempting to predict how the highest court in Missouri would resolve the issues.  *Nordyne, Inc. v. Int'l Controls & Measurements Corp.*, 262 F.3d 843, 846 (8th Cir. 2001)**.**

To prevail on a claim of negligence in Missouri, a plaintiff must prove the existence of a duty, the defendant's breach of the duty, and damages proximately caused by the defendant's

breach. *Morrison v. Kubota Tractor Corp.*, 891 S.W.2d 422, 425 (Mo. Ct. App. 1994) (citing *Commercial Distrib. Ctr., Inc. v. St. Regis Paper Co.*, 689 S.W.2d 664, 671 (Mo. App. 1985)). To succeed on a strict liability-product defect claim, a plaintiff must prove that a product was being sold in the course of a defendant's business, that the product was in a defective and unreasonably dangerous condition at the time of sale, that the product was being used in a reasonably anticipated manner, and that the defective condition was the cause of the plaintiff's damages. Mo. Rev. Stat. § 537.760 (2012); *Blevins v. Cushman Motors*, 551 S.W.2d 602, 607 (Mo. banc 1977).

In their Motions, Defendants assert that the Plaintiffs cannot show causation for their Negligence claim or their Strict Liability-Product Defect claim, because suicide is an independent intervening act under Missouri law. They contend that they are entitled to judgment as a matter of law due to the Plaintiffs' inability to prove this essential element of both claims. In Missouri, an act of voluntary suicide has been held to be "a new and independent intervening act which breaks the causal connection between the allegedly negligent act and the death." *Coleman v. City of Pagedale*, No. 4:06CV01376 ERW, 2008 WL 2439747 at *2 (E.D. Mo. June 16, 2008) (quoting *Eidson v. Reprod. Health Servs.*, 863 S.W.2d 621, 627 (Mo. App. 1993).

In their Response in Opposition to Defendants' Motions, Plaintiffs argue that it is premature for a determination that Defendants are entitled to judgment as a matter of law. They contend the Missouri Supreme Court has rejected prior Missouri court decisions holding that suicide was an independent intervening act breaking the causal connection between allegedly negligent acts and deaths. *See Kivland v. Columbia Orthopaedic Group, LLP*, 331 S.W.3d 299, 306-10 (Mo. banc 2011). In *Kivland*, after undergoing spinal surgery, the decedent found

4

himself paralyzed from the waist down, and in continuous, extreme pain.  *Id.* at 302.  Eight

months after he and his wife filed a medical negligence action against his surgeon, the decedent

committed suicide by shooting himself.  *Id.*  Following his death, the medical negligence action

was amended by adding a claim for wrongful death on behalf of his widow and his daughter.  *Id.*

 The decedent's surgeon moved for partial summary judgment on the action's claims for

wrongful death and lost chance of recovery, asserting that the decedent's suicide was an

independent intervening act, and that, as a matter of law, the surgeon legally could not be

responsible for the decedent's death.  *Id.* at 303-04.  As to the wrongful death claim, the Court

rejected the surgeon's request to make a general exception to the causation standard when the

death is by suicide, and instead held that plaintiffs can show that a defendant's negligence was

the proximate cause of the decedent's suicide by presenting evidence that the suicide was the

"natural and probable consequence" of the injury the decedent suffered at the hands of the

defendant.  *Id.*  at 309.

Plaintiffs also note that the Missouri Court of Appeals upheld a jury verdict in favor of

the parents of a psychiatric patient who committed suicide by jumping from a fifteenth floor

window of a hospital.  *Honey v. Barnes Hosp.*, 708 S.W.2d 686 (Mo. Ct. App. 1986).  Following

his death, the decedent's parents brought a wrongful death suit against the hospital, a general

contractor, and a window manufacturer.  *Id.* at 690-91.  The hospital had contracted for the

construction of a new hospital building, based on certain architectural design specifications.  The

window manufacturer was required to build the windows for the project according to the

specifications.  *Id.* at 690.  The parents' theory of recovery against the window manufacturer was

based upon common law negligence, and their allegations included that the manufacturer

negligently supplied windows without adequate tolerance to allow locking, or negligently supplied windows without limit stops.  *Id.* at 703.  During trial, expert testimony that limit stops would prevent the window from opening more than three to five inches was adduced.  *Id.*  The Court held that there was sufficient evidence for a jury to believe that the presence of a limit stop would have prevented the decedent's death.  *Id.* at 703.

In their Replies, Defendants argue that their Motions must be granted because the decedent's intervening suicidal act broke the causal connection between their alleged act of negligence and his death, and they contend that *Kivland* did not change the standard for determining when a defendant many be held liable for a decedent's suicide. Defendants assert that the Missouri Supreme Court ruled in favor of the *Kivland* plaintiffs because the defendant's suicide was the natural and probable consequence of the surgeon's negligence.  They` claim the facts of this matter are completely dissimilar to those in *Kivland*, because Decedent Riley was not suicidal due to Defendant's negligence.  Defendants also claim that *Honey* does not support Plaintiffs' assertion that a manufacturer may be held liable in a wrongful death action where the decedent committed suicide, because the *Honey* court did not consider the intervening act of suicide when determining causation .

In *Kivland*, the Missouri Supreme Court opined that "[t]he better rule is to focus on what Missouri cases actually require in wrongful death cases: whether the decedent's death was 'a direct result' of defendant's negligence."  *Kivland*, 331 S.W.3d at 309.  Thus, a plaintiff can demonstrate the defendant's negligence was the proximate cause of the decedent's suicide by presenting evidence that the suicide was the natural and probable consequence of the injury the decedent suffered.  *Id.*  Viewing the allegations in the Complaint liberally, and in the light most

favorable to Plaintiffs, the Court finds that Plaintiffs have alleged sufficient facts from which a jury could believe that, had the hook released when more than twenty (20)  pounds of force was applied to the hook, Decedent's death would have been prevented.  The Court concludes that Plaintiffs have stated a cognizable threshold claim for  wrongful death based on negligence and strict liability, sufficient to withstand the Motions for Judgment on the Pleadings.  The Court will deny the Defendants' Motions.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Willo Products Company's and Bradley Corporation's Motions for Judgment on the Pleadings [ECF Nos. 20, 22] are **DENIED**.

Dated this   1st   day of February, 2013.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE